ROSA PLAUT, TRUSTEE, *vs.* SARAH PLAUT ET ALS.

Second Judicial District, Norwich, April Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE AND THAYER, Js.

Language in a will which, standing alone, would create in a number of donees an absolute estate with equal undivided interests, may be qualified by subsequent language, so that the gift thus apparently made is cut down and a particular estate in or for the benefit of a portion only of such donees or other persons created.

Whether that result follows in any given case depends on the testator's expressed intent, to be found by taking all parts of the will together and examining them in connection with the circumstances surrounding the testator.

No technical language is necessary for the creation of a trust. If the deed or will makes it clear that the parties intended that the property given should be for the benefit of another than the donee, a court of equity will make the gift a trust and the donee a trustee.

Such intent is frequently gathered where only precatory words are used; the question then being, whether the testator meant to oblige his

legatee to carry out his expressed wishes, or to leave the legatee to carry them out or not at his discretion.

"Direct" is a word of command, and, while the context may conceivably disclose the testator's intent to use it in a sense not imperative, but only suggestive, its natural, and therefore presumed, meaning is "command."

Where the wrong word has evidently been used by mistake of the scrivener, the right one will be substituted.

A testator devised and bequeathed all his property to his eight children, four sons and four daughters, and to their heirs forever, and added the following: "but I desire and direct that my said children shall keep my real estate intact and entire if they can do so, and that the income of all my property, both real and personal, shall be paid to my said daughters above mentioned excepting those who may be married at and after my death until they are all married, or, in the event of the aforesaid daughters not marrying, until such time as they shall find in [it] convenient, without loss to themselves my said daughters, to divide the income of all said property equally among all my children named herein, sons as well as daughters." *Held:*—

1. That the fee given to the eight children was charged with a trust to divide the income of the property equally among such of the daughters as should remain single until such income should be earned.

2. That the trust would end on the marriage of the last single daughter.

3. That the trust might be sooner ended by concurrence of all single daughters in consent that the income should thereafter be divided among all testator's children.

4. That on the termination of the trust, the legal and beneficial estate would merge in the owners of the legal estate.

5. That one donee in fee only having qualified as trustee, a sale of realty, if required, should be made under the statute regulating the sale of trust realty.

Argued April 28th—decided June 4th, 1908.

SUIT to determine the validity and construction of the will of Joseph Plaut of Norwich, deceased, brought to and reserved by the Superior Court in New London County, *Roraback, J.,* upon the facts stated in the complaint and answers, for the advice of this court.

Joseph Plaut, late of Norwich, died January    , 1905, leaving an estate consisting of both real and personal property and the will here for construction, which has been duly probated. The body of the will reads as follows:—

" First. I direct that all my just debts and funeral expenses shall be paid by my executrix hereinafter named.

" Second. I give, devise and bequeath all my property, both real and personal, of every kind and description, to my beloved children, Rosa Plaut, Sarah, Hattie and Gertie, my daughters, and Louis, Ralph, Eddie and Seymour Plaut, my sons, and to their heirs forever, but I desire and direct that my said children shall keep my real estate intact and entire if they can do so, and that the income of all my property, both real and personal, shall be paid to my said daughters above mentioned excepting those who may be married at and after my death until they all are married, or in the event of the aforesaid daughters not marrying, until such time as they shall find in [it] convenient without loss to themselves my said daughters, to divide the income of all said property equally among all my children named herein sons, as well as daughters. My real estate is thus described : . . . Should my children aforesaid be unable to keep said real estate intact and undivided, then it shall be sold and the income of the proceeds thereof shall be divided among my said daughters in the manner I have described herein, to be afterwards divided in the manner I have directed, should my daughters not marry.

" Third. I hereby appoint my beloved daughter, Rosa Plaut to be the executrix of this my last will and testament and I ask that the Court of Probate require no bonds of her, and I recommend to her to seek the advice when in need of counsel of my beloved nephew Fordy Plaut who will advise her with good counsel."

Rosa Plaut qualified as executrix, and settled the estate, her final account being filed July 30th, 1906. September 25th, 1906, she was appointed trustee under the will, qualified, and is now acting as such trustee. There came into her hands as such trustee, from herself as executrix, real estate appraised at $15,197.33, and personal estate, consisting of securities and deposits in bank, appraised at $21,645.23, making a total of $36,842.56, and such estate is now in her hands, as is also the income re-

ceived therefrom. The annual income amounts to about $2,500.

The eight persons named in the second paragraph of the will as the children of the testator are his only children, and all are now alive, of full age, and parties hereto.

The following questions are presented: "1st. Whether a valid trust is created by the terms of paragraph second of said will, or whether there is an absolute gift of all the testator's property after the payment of debts and funeral expenses and expenses of settlement of his estate, equally to his eight children. 2nd. If a valid trust is created by said will, when, to whom and in what amounts should the income from the principal thereof be paid. 3rd. If a valid trust is created by said will, at what time does such trust terminate and to whom should the principal of said trust be distributed at its termination. 4th. If a valid trust is created by said will, should any of the income therefrom be paid to the testator's sons so long as any of his daughters are unmarried, and if so, when, and how much. 5th. If a valid trust is created by said will, should any of the income therefrom be paid to the testator's daughters who may be married at or after his death, and if so, when and how much. 6th. If a valid trust is created by said will, has the trustee power under its terms to sell the whole or any part of the real estate or personal property now forming a part of the principal of said trust or has the Probate Court for the District of Norwich the power to order such sale. 7th. If a sale of the whole or any part of said real or personal estate can be made either by the trustee under the terms of said will or by order of said Probate Court, what disposition should be made by the trustee of the proceeds therefrom."

*Wallace S. Allis*, for the plaintiff.

*Gardiner Greene*, for Rosa and Sara Plaut.

*Thomas J. Kelly*, for Ralph Plaut *et als.*

PRENTICE, J. The testator, in the first part of the second paragraph of his will, uses language which, standing alone, would have been effective to give his eight children all of his property: the real estate in fee simple and the personalty absolutely. This paragraph, however, does not stop with the language noticed. Connected with it in the same sentence by a suggestive " but, " and in immediately following sentences, are further expressions used by the testator in his attempt to declare his testamentary purpose. It is urged that the effect of what is here found is to cut down the gift apparently made as the result of the preceding language, and to carve out of it certain rights vested in unmarried daughters. That such might be the effect of subsequent language qualifying words apt for the devise or bequest of a fee simple or absolute estate is well settled. Whether or not that result will follow in any given case will depend upon the expressed intent of the testator. *Chesebro* v. *Palmer*, 68 Conn. 207, 213, 36 Atl. 42; *Phelps* v. *Bates*, 54 Conn. 11, 13, 5 Atl. 301. And this intent is to be gathered by taking all parts of the will together and examining them in connection with the circumstances surrounding the testator. *Allyn* v. *Mather*, 9 Conn. 114, 125; *Gold* v. *Judson*, 21 id. 616, 625.

In the portion of his will last referred to, Mr. Plaut expresses his " desire " that his children, who had just been named as the donees of his estate, should keep the real estate intact, if possible, and that the income of all his property, both real and personal, should be paid to unmarried daughters until none remained unmarried or until the happening of another event described by him. He further provides, in substance, that if his children should be unable to keep his realty intact it should be sold, and the income of the proceeds thereof be divided in the same manner as the income of the realty would have been if unsold. Had the testator in these provisions limited himself to the expression of a " desire," the question would have presented itself as to his intent in using such precatory language. No technical language is necessary for the

creation of a trust. If it is clearly apparent from a deed or will that it was the intent of the parties that the property conveyed or carried by it should be held and dealt with for the benefit of another, a court of equity will attach to it the character of a trust, and impose corresponding duties upon the parties receiving it. The intent, in whatever words expressed, if sufficiently clear and apparent, will govern, and this intent may be, and frequently is, gathered where only precatory words are used. *Colton* v. *Colton*, 127 U. S. 300, 312, 8 Sup. Ct. Rep. 1164; *Dexter* v. *Evans*, 63 Conn. 58, 61, 27 Atl. 308; *Bristol* v. *Austin*, 40 Conn. 438, 447. "The point really to be decided in all these cases, is whether, looking at the whole context of the will, the testator has meant to impose an obligation, on his legatee, to carry his expressed wishes into effect, or whether, having expressed his wishes, he has meant to leave it to the legatee to act on them or not at his discretion." *Williams* v. *Williams*, 1 Simons N. S. 358, 369. To the same effect: *Harper* v. *Phelps*, 21 Conn. 257, 269; *Bristol* v. *Austin*, 40 id. 438, 447; *Dexter* v. *Evans*, 63 id. 58, 61, 27 Atl. 308; *Hughes* v. *Fitzgerald*, 78 Conn. 4, 7, 60 Atl. 694.

But Mr. Plaut did not content himself with the expression of his wishes. He directed. His language was, "but I desire and direct." It is of course conceivable that a testator might use the word "direct" without intending to use it in an imperative sense, and only intending to convey suggestion, advice, or recommendation, and thereby to influence, without taking away discretion. And that such was the intent of the user might be discernable from the context. *Hurd* v. *Shelton*, 64 Conn. 496, 498, 30 Atl. 766. But "direct" is a word of command, and it is difficult to read the provisions of Mr. Plaut's will into which it enters without coming to the conclusion that he used it in its natural, and therefore presumed, meaning. *Leake* v. *Watson*, 60 Conn. 508, 21 Atl. 1075. All evidence of a contrary intent is wanting. Nowhere in the will can be found a suggestion that the testator contemplated that a

discretion in the matter was reserved to the children. The imperative form of statement runs throughout the paragraph which alone bears upon the subject, and in its closing sentence the provisions in question are characterized as directory.

Mr. Plaut's will, when read in its entirety, thus discloses his intention to impose upon the donees of his property an obligation in favor of unmarried daughters, with the result that the title to the property received by them under the will stands charged with a trust for the performance of that obligation.

Our advice is further asked as to the nature and extent of this trust. Its terms are such that the income of the property is to be divided equally among such of the testator's daughters as shall have remained unmarried down to the time when such income was earned. Marriage after the testator's death is as effective to deprive the daughter so married of a right to share in the division of future income as marriage antedating his death would have been. Upon the marriage of the last of the daughters, the trust terminates. The trust may also be terminated prior to the happening of this event by the concurrence of all the daughters who shall have remained unmarried in a consent that the income derived from the property may thereafter be divided among all the children of the testator. Upon the termination of the trust the legal and beneficial estates in the testator's property will merge in the owners of the legal estate. Until this event happens no son will be entitled to any part of the income derived from the property.

In the will, near the middle of paragraph second, the word before " convenient " was written " in." The word intended by the testator was manifestly " it," as all the parties agree. The mistake of the scrivener will be corrected, and the language read and construed as intended. *Phelps* v. *Bates*, 54 Conn. 11, 16, 5 Atl. 301.

The will directs the testator's children to keep the real estate intact and entire, if they can do so. In anticipa-

tion, however, of their inability to carry out his wishes in that regard, he directs a sale in that contingency. Entertaining, as he manifestly did, very crude notions of legal matters and of the nature and incidents of a trust, he doubtless contemplated that his children would co-operate in carrying out his wishes and directions, and that any necessary sale would be made by their joinder in a conveyance. Were all now exercising the trust by means of which his wishes are being carried into effect, it is quite possible that the will might be fairly construed as confiding to them the power of sale exercisable by them under the conditions named. Under present conditions, however, if a situation should arise in which a sale of any of the realty would be justified under the terms of the will, such sale should be made pursuant to the provisions of statute regulating the sale of lands held in trust. The trust in favor of unmarried daughters embodies in it by force of the provisions of the will the power to sell so much of the corpus as is realty as an incident of the trust created. In the event of a sale the proceeds should be invested by the trustee, as under the law trust funds may be, and, thus invested, held by the trustee in substitution for the realty sold, in the same manner and subject to the same conditions and rights as the personal estate left by Mr. Plaut.

The Superior Court is advised to render judgment in conformity with the views herein expressed.

No costs in this court will be taxed in favor of either party.

In this opinion the other judges concurred.