In re SHOTWELL'S TRUSTEESHIP.

GROENVELD, Respondent, v. SHOTWELL, Appellant.

(245 N. W. 251.)

(File No. 7474. Opinion filed November 15, 1932.)

`J. G. Bradford` and `S. K. Grigsby`, both of Sioux Falls, and `F. W. Moore`, of Bremerton, Wash., for Appellant.

`Caldwell & Burns`, of Sioux Falls, for Respondent Groeneveld.

`Boyce, Warren & Fairbank`, of Sioux Falls, for Respondent Frost.

CAMPBELL, P. J. On February 19, 1930, Ezra Shotwell delivered to Sarah A. Groeneveld Liberty bonds of the face value of $2,000, together with a document denominated "trust instrument," reading as follows:

"Trust Instrument.

"This 19th day of February, 1930, I am placing in trust with Sarah A. Groeneveld the sum of Two Thousand ($2,000.00) Dollars in liberty bonds for my grandson, Robert Shotwell, to be given to him at her discretion, all interest from above bonds, after my death, to be paid to my grandson, Robert Shotwell, when due.

"[Signed]   Ezra M. Shotwell."

Ezra Shotwell died August 17, 1930, and his estate is now in course of probate by Sarah Groeneveld (the trustee above named)

as executrix of his will. Pursuant to the implied provision of the trust instrument, interest accruing on the res up to August 17, 1930, was paid to Ezra Shotwell or his estate. Interest accruing thereafter was paid in accordance with the express mandate of the trust instrument to Robert Shotwell, the named beneficiary, and accepted and receipted for by him until the time of his death on November 9, 1931. The estate of the beneficiary Robert Shotwell is now in course of administration in the state of Washington, Edwin Shotwell being his administrator. After the death of Robert Shotwell, and in December, 1931, the trustee proceeded in the circuit court of Minnehaha county, S. D., (pursuant to chapter 156, Laws 1923, and court rules promulgated pursuant thereto), for the direction of that court as to the disposition of the corpus of the trust. The question presented was whether the res should go to the estate of Ezra Shotwell or to the estate of Robert Shotwell. Bertha Frost, intervener, is one of the residuary legatees of Ezra Shotwell. The trial court ordered that the bonds should go to the estate of Ezra Shotwell, from which order the administrator of the estate of Robert Shotwell has appealed.

It seems to be the contention of respondent that, inasmuch as Robert Shotwell, the named beneficiary, died before the trustee in her discretion had seen fit to turn over the corpus of the trust to him, there was a total failure and extinguishment of the trust which thereby became utterly impossible of performance, and that thenceforth the trustee holds the res upon a resulting trust for the estate of the trustor. Respondent cites and relies upon section 1226, Rev. Code 1919, reading as follows: "A trust is extinguished by the entire fulfillment of its object, or by such object becoming impossible or unlawful." Appellant urges, and we think rightly, that respondent fails to recognize the distinction between an extinguishment of a trust and a destruction of the transfer upon which the trust was imposed.

The instrument before us does not purport to establish a testamentry trust and indeed, unless holographic, could not be a valid testamentary disposition. We have here the case of an express trust in præsenti which was completed by the execution of the declaration of trust and the delivery of the trust res to the trustee and her acceptance of the trust, and which, since no power

of revocation was reserved in the declaration, was irrevocable after its acceptance, actual or presumed, by the trustee and beneficiaries. Section 1227, Rev. Code 1919. Upon the establishment of the trust the trustee immediately acquired, subject to the trust, such legal title to the corpus as was necessary to perform the whole trust, which in this case was the whole title. A testamentary trust is ambulatory until the death of the testator, and in those cases title to and possession of the res remains in the testator until his death. That is a distinctly different situation from the one here presented. See Perry on Trusts (7th Ed.) § 97; Nichols v. Emery, 109 Cal. 323, 41 P. 1089, 50 Am. St. Rep. 43, there cited. The trustor in this case might have provided in the trust instrument for a further disposition over in the event Robert Shotwell should die before the trustee in the exercise of her discretion saw fit to deliver the res to him, but the trustor did not so do. It is urged that the trustor desired his grandson personally to be the object of his bounty (the trust being admittedly in the nature of gift and not upon consideration) and had no desire to make a gift to the heirs of his grandson. It must be answered that the desire or intention of the trustor must be ascertained from and limited by the necessary legal effect of his acts. After the trust in question was irrevocably established by the declaration of trust, the delivery of the bonds, and the acceptance, actual or presumed, of the trustee and beneficiary, all right, title, and interest to the bonds passed out of the trustor excepting only a right retained by fair implication in the nature of a life estate to receive the income while he lived. There was a vested present gift of the bonds to the ultimate beneficiary subject only to the life estate (if we may use this convenient term from real property law) of the trustor and subject further to be deferred in possession and enjoyment in the discretion of the trustee. The discretion of the trustee, by the terms of the trust instrument, however, could not determine *whether* the bonds would be given to Robert. Her discretion was limited to determining *when* the bonds should be delivered to him. There vested immediately in Robert Shotwell an equitable right of ownership in the bonds which was a property right, and which was descendable, devisable, and alienable whether or not he ever lived to take actual personal possession thereof. See 25 Calif. Jur. tit. Trusts, § 176. See, also; Lippincott v. Stottsenburg (1890) 47 N. J. Eq. 21, 20

A. 360. As illustrative of the same principle, see, also, Fox v. Hicks (1900) 81 Minn. 197, 83 N. W. 538, 50 L. R. A. 663; Holcomb v. Palmer (1909) 106 Me. 17, 75 A. 324.

■ At this point we desire to say parenthetically that no question is raised in this case as to how far, if at all, the courts might control the discretion given to the trustee during the life of the named beneficiary, and no language herein should be construed as indicating any views in that regard. The life interest of the trustor has been ended by his death. The possibility of the exercise of discretion by the trustee with reference to time of delivery to Robert has been ended by the death of Robert. The trust is therefore extinguished (though the gift is not destroyed), and the res should pass in possession, pursuant to the vested property rights arising from the executed gift and free of the limitations imposed by the trust provisions, to the heirs of Robert Shotwell. If Robert Shotwell had died without heirs prior to receiving possession of the res, whether the res would then go to the sovereign state as bona vacantia or revert to the heirs of the trustor is an interesting question not involved in this case. See Re Trusts of the Abbott Fund (1900) 2 Chancery Division, 326; Cunnack v. Edwards (1896) 2 Chancery Division, 679.

The order appealed from is reversed, and the cause remanded, with directions to the circuit court to enter an order directing the trustee to turn over the trust res and all residue of the trust property to appellant as administrator of the named beneficiary.

All the Judges concur.